IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BENJAMIN CARTER,

     Plaintiff,

     v.                         Civil Action No. 3:23cv788

SGT. K. DAUGHERTY,

     Defendant.

## MEMORANDUM OPINION

Benjamin Carter, a former Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Verified Complaint (ECF No. 12), the Partial Motion to Dismiss filed by Defendant Daugherty (ECF No. 27), and the Motion for Summary Judgment filed by Defendant Daugherty (ECF No. 43).[2] Defendant Daugherty and the Court provided Carter with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 30, 31, 43-1, 45.) Carter filed two brief responses and two Affidavits in response to the Partial Motion to Dismiss and Motion for Summary Judgment. (ECF No. 46, 50–52.) For the reasons stated below, the Motion for

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis, underlining, and citations to exhibits in the quotations from Carter's submissions.

Summary Judgment will be GRANTED in part and DENIED WITHOUT PREJUDICE in part,

and the Partial Motion to Dismiss will be DENIED as moot.

### I.  Summary of Claims and Allegations

#### A.  Carter's Claims and the Pending Motions

In his Verified Complaint, Carter names as the sole Defendant, Sgt. K. Daugherty, a

sergeant at Sussex I State Prison ("Sussex").  (ECF No. 12, at 1.)  Carter raises the following

"Legal Claims" (ECF No. 12, at 12):[3]

> Claim 1:     "Daugherty continued to take adverse actions against me for filing
> grievances against her" in "violation of [Carter's] First
> Amendment[4] . . . to be free from retaliation for accessing the
> grievance procedure" on the following dates:
> (A) July 6, 2022
> (B) August 8, 2022
> (C) September 9, 2022
> (D) September 13, 2022
> (E) October 16, 2022
> (F) November 3, 2022
> (G) November 22, 2022.  (ECF No. 12, at 12.)
>
> Claim 2:     "Daugherty used excessive force by slamming my hand in the door
> slot maliciously w/o penological reason on November 22, 2022,
> which constitutes a violation of my Eighth Amendment [right[5]] . . .
> to be free from cruel and unusual punishment." (ECF No. 12, at 13.)
>
> Claim 3:     "Daugherty acted w/negligence on October 30, 2022 . . . by failing
> to do the inmate checks pursuant to her legal duties of OP841.4, and
> caused me the head injuries and mental anguish, emotional distress

---

[3] Ordinarily, the Court would recite the allegations before setting forth the claims for relief.  However, the manner in which this matter has been litigated necessitates that the Court alter that process here by setting forth Carter's claims first.

[4] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people to peacefully to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.

> I suffered . . . which constitutes acts of negligence in Virginia under the common law tort claims personally against Daugherty." (ECF No. 12, at 13.)

Defendant Daugherty filed the Partial Motion to Dismiss on November 19, 2024. (ECF No. 27.) Defendant Daugherty moved to dismiss Claims 1(B), 1(C), 1(E), 1(F), 1(G), Claim 3 and any claim for monetary damages against Defendant Daughtery in her official capacity. Defendant Daugherty filed a Partial Answer with respect to Claims 1(A), 1(D), and Claim 2. (ECF No. 29.) Subsequently, Defendant Daugherty moved for summary judgment with respect to all claims except Claim 1(D) and Claim 2. As discussed below, because of the state of the briefing, the Court dismisses only Claim 1(B). Defendant Daugherty will be required to file a renewed motion for summary judgment with respect to the remaining claims.

### B. Carter's Allegations

In his Verified Complaint, Carter states the following in support of his claims:

1. On July 6, 2022, Daugherty refused to let me go to the shower, isolated from the other inmates in the Housing Unit (HU) that day, when I accessed the "verbal complaint process" of Operating Procedure (OP) 866.1 to her supervisor Branch, J., reporting her denial of my OP841.4 (RHU procedure) liberty to have a shower three times a week.

2. Branch remedied me, and ordered Daugherty to let me take a shower as my resolution per OP866.1 to my verbal complaint.

3. Upon getting me out of my cell to take me to the shower, Daugherty told the other C/O's working the HU to help her "fuck this cell up" when I went to the shower.

4. Once I was locked in the shower, Daugherty and the other 2 C/O's took out her adverse actions in retaliation by trashing my cell, stepping all over my bed linen[s] w/their dirty boots contaminating my pillow and sheets I sleep on, they destroyed my legal filings, and threw out a picture I had in my Bible of my deceased father that can never be replaced, and I suffered severe depression, spells, no new bed linens, and had to pay for more copies of my legal documents that was roughly 25 pages at $0.10 per page.

5. I immediately filed an emergency grievance pursuant to OP866.1 reporting Daugherty's retaliatory actions to another supervisor in the HU, and I requested video footage be saved of the incident and documented my injuries and need to be separated from the environment that was becoming retaliatory.

6.    As I continued to proceed through the grievance process for the July 6, 2022 misconduct, Daugherty continued to deny my claims to her supervisors.

7.    On August 8, 2022, Daugherty came to the HU closing inmates' tray slots and when she got to mine, she continued to slam the slot door excessively hard so that it would bang loud from the metal contact between the slot door and the locking latch and wouldn't lock causing the latch to get jammed until it could be realigned to lock.

8.    Daugherty walked away from my cell when she finally got tired of slamming the slot door and pushed it shut.  When she then came back to my cell and opened the slot and then yanked her hand back dramatically and said, "that's assault."  You're going back to Red Onion now," and wrote a false charge in retaliation for filing grievances and complaints against her for assaulting her.

9.    I was penalized $8.00, denied my IM-2 privileges . . . that took me over 18 months to receive, and I was placed back in RHU status (punitive segregation status) on 24-hour solitary confinement for roughly 2 weeks due to this false retaliatory change by Daugherty.

10.    On September 9, 2022, Daugherty continued on her rampage of retaliatory actions and destroyed the electric breaker that controlled my cell in the HU. Electricity for my cell was deactivated but no-one else's was in my HU other than the cell I was in.

11.    John Doe came to my cell and said Daugherty said I won't get to have a good birthday now, and that I should've never [written] her up.

12.    My birthday was on September 11, 2022, and I was w/o electricity to watch my TV (IM-2 privilege), charge my Jp6 player to correspond with my family and friends, and suffered even more depression attacks, leading to me crying multiple times alone the 3 days w/o electricity all alone.

13.    My aunt scheduled multiple video visits for the month following Daugherty's destruction of the electricity to my cell to help attempt to cheer me up from the depression I was suffering severely.

14.    I had been receiving the visits w/ my aunt w/o issues until October 16, 2022, when Daugherty was the c/o who had to let me go to my visit.

15.    Daugherty continued on her rampage of retaliation for me reporting her actions through the grievance procedure and refused to let me go to my scheduled visit for no penological reason, and I never received another visit from my aunt due to illness-related reasons.

16.    My life became extremely miserable and depressing as Daugherty was being allowed to retaliate against me to the point I became paranoid, anxious, and depressed so severely when my aunt became ill, I contemplated suicide because of Daugherty's retaliatory actions to me.

17.    On September 13, 2022, I went to the outside cage area where all the inmates in RHU HU are able to go upon request, where I was locked into a roughly 70 sq. foot area, w/ only a concrete ground and surrounded by wire mesh style.

18.    Upon returning to my cell, Daugherty['s] retaliat[ion] left me as the last inmate in the cage area as she took all the other inmates inside.

4

19.     I was in need to go to the bathroom severely because I suffer from a stomach illness of irritable bowel syndrome ("IBS") as I was left outside by myself causing extreme stomach pains as I tried to hold my bowels in, sweating, dehydrated, and paranoid w/ no water, or bathroom-toilet to use for another roughly 30 minutes outside alone.

20.     Daugherty then came back to the cage area to let me go back in and said, "oh, your asthma isn't ok'", sarcastically and then she said, "I can do what I want, so your grievances don't mean shit, just so you know," when I didn't respond to her first sarcastic retaliatory intended comment about my serious respiratory illness.

21.     Once I got back into my cell, my lunch meal had just been placed in my cell by someone while I was outside and the hot meal was now cold, and I was the only inmate in the HU not to be able to be afforded the meal hot served, as it was meant to be, and I had unintentionally released feces in my boxers when I was struggling to hold my bowels due to Daugherty continuing to try and succeeding in retaliating against me, humiliating me in front of the other inmates and staff.

22.     On October 30, 2022, while housed at SXI under Daugherty's welfare personally in RHU pursuant to OP 841.4 which states, "a correction officer must check each inmate . . . on RHU status twice an hour, no more than 40 minutes apart on a []regular schedule." (Legal Duty).  Daugherty failed to do the mandated inmate check (Breach of Duty) from 12:30pm-4:30pm, causing no c/o to check on me, as I was unconscious on my cell floor from becoming weak and falling and hitting my head, and was bleeding from my head (right side of my forehead-above eyebrow) for hours (physical injury) w/ no medical or staff period b/c no-one knew I was unconsciously bleeding.

23.     I suffered an open cut on my eyebrow and have a permanent scar now from my injury, I suffered severe depression, anxiety, paranoia spells, and roughly a month of massive migraines but never could get treated due to Daugherty's negligence on October 30, 2022.

24.     On November 3, 2022, Daugherty came into my HU-3A where I was locked in my cell causing no disruption and began yelling that I was a snitch and intel to the entire HU-3A inmates when she deactivated her body camera.

25.     Immediately thereafter her statements to the inmates, the inmates in the HU began threatening to stab me and whoop my ass the first time they got a chance to.

26.     Daugherty continued to put my safety in danger by telling the inmates that she would let them have at it (me) as soon as she could get me to come off protective custody (PC) for snitching on inmates selling drugs, which was a lie.

27.     I never snitched or reported anyone selling drugs and I never been placed on PC, but the maximum security inmates continued to threaten me and harass me for this entire time incarcerated, and I was in a physical fight w/ an inmate b/c he continued to threaten me and harass me from Daugherty's retaliatory statements to the inmates to physically harm me, which I was in a physical altercation b/c of it on December 7, 2022 where I was cut multiple times over my back w/ a prison shank and bitten in my knee when confronted by me.

28.     Everywhere I go now incarcerated (which has been to Red Onion State Prison ("ROSP")), the inmates call me a snitch and threaten me, attempting to extort me, harassing me, and I suffer humiliation, anxiety, and severe paranoia attacks whenever I'm around inmates now in fear for my well-being.

29.     On November 22, 2022, Daugherty came into my HU where I was locked in my cell causing no disruptions as she turned her body camera off again while she was passing out the dinner meals on the bottom tier (I was the last cell of the bottom tier of the HU cell 3A-22).

30.     Daugherty continued on her rampage of adverse actions in retaliation against me and took the last meal on the tray cart for the bottom tier and placed in on the trash shelf of the tray cart (bottom shelf) and went upstairs out of my view to grab a meal from the top tiers' tray cart.

31.     Daugherty then brought that tray to my cell and put it on my door slot, and when I went to grab the meal, w/o penological reason or warning, Daugherty slammed the slot door on me grabbing my meal, and the slot cut my right hand from Daugherty's excessive force an[d] retaliation and yelled "Ahh!" in pain.

32.     My right middle finger knuckle began to bleed and burn immediately from the assault, and it eventually started to swell minutes later as well, leaving a permanent scar on my hand and having a[n] open wound and sore that took roughly 4 weeks to heal.

33.     Once I wiped all the blood from my hand, I went to open the tray to eat my dinner meal, when I opened it, Daugherty had sh[a]ken the tray up in retaliation causing all of the separate meal contents to be contaminated, and saturated w/ the other meal contents (the bread was soggy and soaked in the liquid from the cabbage, the cake was broke into the spaghetti, and the cabbage was mixed w/ the spaghetti).

(ECF No. 12, at 2–12.) Carter asks for monetary damages and any equitable relief the Court deems

appropriate. (ECF No. 12, at 14.)

In the Partial Motion to Dismiss Defendant Daughtery contends that Carter fails to allege

any retaliation with respect to Claim 1(B), Claim 1(C), Claim 1(E), Claim 1(F), and Claim 1(G),

but concedes that Carter pled sufficient facts with respect to Claim 1(A). (ECF No. 28, at 8.) In

her Motion for Summary Judgment, Defendant Daugherty again argues that Carter fails to

demonstrate retaliation for the above claims but adds that Carter failed to plead sufficient facts to

state a claim for retaliation in Claim 1(A), and that she is also entitled to qualified immunity with

respect to Claim 1(A) and Claim 1(G). (ECF No. 44, at 8–10, 19–20). In the alternative,

Defendant Daugherty argues that Carter failed to exhaust his administrative remedies with respect to Claim 1(B), Claim 1(C), Claim 1(F), and Claim 1(G). (ECF No. 44, at 24–29.) Finally, Defendant Daugherty argues that with respect to Claim 3, the failure to negligently follow a Virginia Department of Corrections Policy fails to state a claim for relief under § 1983. (ECF No. 28, at 14–15.)[6]

Because the Court finds that Carter failed to exhaust his administrative remedies with respect to Claim 1(B) only, the Court will dismiss that claim. Nevertheless, for the reasons stated below, the Motion for Summary Judgment will be denied without prejudice with respect to the remaining claims, and the Partial Motion to Dismiss will also be denied.

## II.  Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[6] Defendant Daugherty has not moved for summary judgment with respect to Claim 1(D) or Claim 2 or otherwise mentioned these claims except to indicate that she filed a Partial Answer with respect to Claims 1(A), Claim 1(D), and Claim 2. (ECF No. 44, 1.) At this juncture, it is unclear whether she admits a material dispute of fact exists with respect to these claims.

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendant Daugherty asks the Court to dismiss Claims 1(B), 1(C), 1(E), 1(F), and 1(G), because Carter failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendant Daugherty bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Relevant here, in support of her Motion for Summary Judgment, Defendant Daugherty submitted: (1) the affidavit of Z. Dunson, the Ombudsperson for Sussex (ECF No.

44-1, at 1–6); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure

("Operating Procedure § 866.1," ECF No. 44-1, at 7–23); (3) and, a record of Carter's grievance

related material relevant to Claims 1(B), 1(C), 1(E), 1(F), and 1(G) (ECF No. 44-1, at 24–32).

At this stage, the Court is tasked with assessing whether Carter "has proffered sufficient

proof, in the form of admissible evidence, that could carry the burden of proof of his claim at

trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a

non-movant must respond to a motion for summary judgment with affidavits or other verified

evidence. *Celotex Corp.*, 477 U.S. at 324. Relevant here, Carter filed Exhibits in Opposition to

Motion to Dismiss (ECF No. 39), his own Declaration (ECF No. 50). Carter also submitted a

Verified Complaint as recited above.

In light of the foregoing submissions and principles, the following facts are established

for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Carter.

### III. Undisputed Facts Related to Exhaustion

#### A. Grievance Procedure at the Virginia Department of Corrections

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the

inmate must demonstrate that he or she attempted to resolve the issue through the informal

complaint process. *See* Operating Procedure at § 866.1.I.D.1–4. "The first step in in the

informal complaint process is for the offender to discuss their issue with staff for a quick

resolution." *Id.* at § 866.1.I.D.1. If the issue is not resolved verbally, the offender should submit

a *Written Complaint. Id.* at § 866.1.I.D.2. Prison staff have fifteen days from receipt of the

*Written Complaint* to provide an appropriate written response. *Id.* at § 866.1.II.B.4. "If the issue

on the *Written Complaint* is not resolved to the satisfaction of the offender, or staff fail to

provide a written response within 15 days, the offender may file a *Regular Grievance* . . . . The

*Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* at § 866.1.I.D.4

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* at § 866.1.III.C.3&4. "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section of the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* at § 866.1.III.C.4. "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* at § 866.1.III.C.5.

### 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." *Id.* at § 866.1.III.C.3. Once the grievance is accepted for review, the Institutional Ombudsperson determines the proper course of investigation. *Id.* at § 866.1.III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the offender unless a continuance is authorized." *Id.* at § 866.1.III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A. The appeal must be submitted within five days of receipt of the *Offender Grievance Response. Id.* at § 866.1.IV.B.2. Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the

10

Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *See id.* at § 866.1.IV.C.1.a–e.   For most issues, the Level II appeal is the final level of review.  (ECF No. 21-7, at 3.)

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* at § 866.1.V.B.

### B.  Carter's Grievance Materials

#### 1.  August 8, 2022 Incident (Claim 1(B))

Z. Dunson, the Ombudsperson at Sussex avers that Carter filed no grievance materials with respect to the August 8, 2022 incident where Carter alleged that Defendant Daugherty opened and slammed his tray slot and then falsely accused him of assault.  (ECF No. 44-1, at 4.)

#### 2.  September 9, 2022 Incident (Claim 1(C))

On September 9, 2022, Carter submitted a Written Complaint (SXI-22-INF-01598) alleging that Sussex officials cut off the electricity in his cell "in retaliation of Daugherty" and Carter requested that video be preserved.  (ECF No. 44-1, at 24.)  On September 21, 2022, Unit Manager Branch responded that the "information passed on to Intel to [p]reserve footage."  (ECF No. 44-1, at 24.)  According to Z. Dunson, Carter did not file a Regular Grievance pertaining to this incident that was processed in the grievance system.  (ECF No. 44-1, at 4–5.)  However, Carter very clearly submitted a copy of a Regular Grievance to the Court for this incident that appears to be date-stamped "RECEIVED" on September 29, 2022 by the Grievance Office.  (ECF No. 39-1, at 62.)  The record does not reflect that the Regular Grievance was logged, or that Carter received a response to this grievance.  The record also does not reflect that Carter pursued an appeal.

### 3. **October 16, 2022 Incident (Claim 1(F))**

On November 3, 2022, Carter submitted a Written Complaint (SXI-22-INF-02153) alleging that Defendant Daugherty yelled out in the pod that Carter was a snitch and that she refused to check on him and he feared for his safety. (ECF No. 44-1, at 27.) Lt. Green responded that he/she "address[ed] this issue with Sergeant Daugherty and [e]nsure[d] . . . staff are providing [Carter] with services you need" and to contact the intel department about video or camera footage. (ECF No. 44-1, at 27.) On November 28, 2022, Carter submitted a Regular Grievance, citing SXI-22-INF-02153, and requesting monetary relief and to be kept separate from Defendant Daugherty. (ECF No. 44-1, at 26.) On December 28, 2022, Warden McCoy provided the Level I response indicating that the camera footage was reviewed and that "the footage [did] not show Sgt. Daugherty yelling out that you are a snitch" and that "[t]here [was] no evidence to support [his] claim." (ECF No. 44-1, at 25.) The Regular Grievance was determined to be unfounded. (ECF No. 44-1, at 25.) According, to Z. Dunson, Carter did not submit a Level II appeal. (ECF No. 44-1, at 5.) However, Carter submitted a copy of the Level I response to the Court reflecting that he filled out the area indicating that he wished to appeal and dated the form December 30, 2022. (ECF No. 39-1, at 39.) This form was date-stamped "RECEIVED" on January 25, 2023, by the Ombudsman Unit. (ECF No. 39-1, at 39.) Carter also has submitted a Memorandum from D. Hudson, the Regional Ombudsperson, showing that an appeal was rejected because it was submitted beyond the five-day period time-period allowed for appeals. (ECF No. 39-1, at 38.)

### 4. **November 22, 2022 Incident (Claim 1(G))**

On November 22, 2022, Carter submitted a Written Complaint (SXI-22-INF-02360) alleging that Defendant Daugherty took his meal tray and shook it as a form of retaliation in

violation of the First Amendment. (ECF No. 44-1, at 34.) Carter threatened "to use physical force next time to defend [him]self." (ECF No. 44-1, at 34.) On December 3, 2022, Unit Manager Carr responded that Carter's First Amendment rights were not violated. (ECF No. 44-1, at 34.) On December 14, 2022, Carter filed a Regular Grievance (SXI-22-REG-0164) complaining that Unit Manager Carr did not understand the First Amendment and seeking monetary damages and camera footage for the alleged retaliation. (ECF No. 44-1, at 33.) On January 12, 2023, Warden McCoy provided the Level I response indicating that after investigation, Defendant Daugherty was not in the pod at the time he received the allegedly shaken meal tray and there was no evidence of staff misconduct or retaliation. (ECF No. 44-1, at 30.) The Regular Grievance was determined to be unfounded. (ECF No. 44-1 at 30.) According to Z. Dunson, Carter did not appeal the Level I response. (ECF No. 44-1, at 5.) However, once again, Carter submitted a copy of the Level I response to the Court reflecting that he filled out the area indicating that he wished to appeal and dated the form January 25, 2023. (ECF No. 39-1, at 34.) This form was date-stamped "RECEIVED" on January 27, 2023, by the Ombudsperson Unit. (ECF No. 39-1, at 34.)

## IV. Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and

13

pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Carter filed no grievance material pertaining to Claim 1(B), wherein he alleged that on August 8, 2022, Defendant Daugherty allegedly continuously opened and slammed his tray slot and then falsely accused him of assault. Therefore, Carter failed to exhaust his administrative remedies for Claim 1(B).[7] Claim 1(B) will be DISMISSED WITH PREJUDICE.[8]

With respect to Claims 1(C), 1(F), and 1(G), Defendant Daugherty has not met her burden at this juncture to show that Carter did not exhaust his administrative remedies with respect to these claims. Defendant Daugherty's response fails to consider the additional

---

[7] In response, Carter vaguely suggests "I exhausted ALL claims of retaliation, excessive force, negligence against Daughterty . . . and have provided the rejected, and logged Level I grievances and Level II responses attached to this case[] docket at ECF 39." (ECF No. 50 ¶ 2.) The grievance materials submitted at ECF No. 39 do not reflect that Carter exhausted his administrative remedies for Claim 1(B).

[8] Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see Van Houten v. Marlett*, 330 F. App'x 161, 162–63 (10th Cir. 2009). That is the case here because the thirty-day time limit for filing any relevant grievance has long since expired. Consequently, Claim 1(B) will be dismissed with prejudice.

grievance material that Carter submitted to the Court in ECF No. 39. Accordingly, the Motion for Summary Judgment is DENIED WITHOUT PREJUDICE in part with respect to Claims 1(C), 1(F), and 1(G).

### V. Failure to Comply with the Federal Rules Pertaining to Summary Judgment

Defendant Daugherty initially moved to dismiss Claims 1(B), 1(C), 1(E), 1(F), 1(G), Claim 3 and any claim for monetary damages against Defendant Daughtery in her official capacity. Defendant Daugherty filed a Partial Answer with respect to Claims 1(A), 1(D), and Claim 2. (ECF No. 29.) Subsequently, Defendant Daugherty moved for summary judgment with respect to all claims except Claim 1(D) and Claim 2.

A review of Defendant Daugherty's Motion for Summary Judgment reflects that it fails to comply with this Court's Local Rules. Local Rule 56(B) provides:

> **(B) Summary Judgment – Listing Of Undisputed Facts:** Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party *contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed.* A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added). Defendant Daugherty's Motion for Summary Judgment fails to comply with the above Rule. Defendant Daugherty's motion completely lacks a statement of undisputed fact. Instead, Defendant Daugherty identifies "MATERIAL ALLEGATIONS OF FACT," and then states: "Daugherty does not admit to the veracity of any of Carter's allegations; however for the purposes of the Motion to Dismiss, the Complaint sets forth the following material statements." (ECF No. 44, at 2.) This is clearly not a "listing all

15

material facts as to which the moving party *contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed.*" E.D. Va. Loc. Civ. R. 56(B) (emphasis added).[9]

Defendant Daugherty then sets forth the standard for a motion for summary judgment and clearly indicates that "the Court should enter summary judgment" on Carter's retaliation claims for some of the same reasons as set forth in her Partial Motion to Dismiss. At first glance it appears that Defendant Daugherty imports her purely legal arguments from the Motion to Dismiss. However, later, she cites an affidavit attached to the Motion for Summary Judgment. (*See* ECF No. 44, at 17.)[10] The Court will not permit Defendant Daugherty to litigate a hybrid motion to dismiss and motion for summary judgment. The manner in which she has litigated this matter is confusing to the Court, and therefore, it is likely confusing to Carter. Accordingly, with the exception of Claim 1(B) that will be dismissed for Carter's failure to exhaust his administrative remedies, the Motion for Summary Judgment (ECF No. 43) will be DENIED.

Because it is clearly the intent of Defendant Daugherty to pursue her Motion for Summary Judgment at this juncture, and many of the claims are more appropriately addressed on summary judgment, the Motion to Dismiss will be DENIED as moot.[11]

---

[9] Later, with respect to Carter's failure to exhaust claims, Defendant Daugherty has a second factual section or "STATEMENT OF FACTS RELATED TO THE GRIEVANCE PROCEDURE AND EXHAUSTION." (ECF No. 44, at 21 (emphasis omitted).) While this section is more compliant with the Local Rules, Defendant Daugherty must have one section of undisputed facts.

[10] To the extent that Defendant Daughtery wished to rely on such evidence it must be identified in her listing of undisputed facts, not just included for the first time in an argument.

[11] The Court also notes that Defendant Daugherty argues that with respect to Claim 3, the failure to negligently follow a Virginia Department of Corrections Policy fails to state a claim for relief under § 1983. While that may be true, Carter has alleged a claim that Defendant Daugherty was negligent under Virginia law, not just that she failed to follow a VDOC policy.

16

## VI.  Conclusion

The Motion for Summary Judgment (ECF No. 43) will be GRANTED in part and

DENIED WITHOUT PREJUDICE in part, and the Partial Motion to Dismiss (ECF No. 27) will

be DENIED as moot.  Claim 1(B) will be DISMISSED.  Any party wishing to file a renewed

motion for summary judgment must do so within sixty (60) days of the date of entry hereof.  The

parties must comply with both the Federal Rules of Civil Procedure and the Local Rules of this

Court.

An appropriate Order will accompany this Memorandum Opinion.


Date: 08/29/2025
Richmond, Virginia

_____
/s/
M. Hannah Lauck
United States District Judge

17