**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**BENJAMIN CARTER,**

> **Plaintiff,**

> **v.**                                                           **Civil Action No. 3:23cv788**

**SGT. K. DAUGHERTY,**

> **Defendant.**

## **MEMORANDUM OPINION**

Benjamin Carter, a Virginia inmate proceeding *pro se*, and a frequent litigant in this Court, filed this 42 U.S.C. § 1983 action.[1] The matter is before the Court on the Verified Complaint (ECF No. 12), and the renewed Motion for Summary Judgment filed by Defendant Daugherty (ECF No. 76).[2] The Court provided Carter with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 78.) Carter filed a Memorandum of Law in Opposition ("Response," ECF No. 79) and a Declaration (ECF No. 80). For the reasons stated below, the Motion for Summary Judgment will be GRANTED in part and DENIED in part.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis, underlining, and citations to exhibits in the quotations from Carter's submissions.

## I. Summary of Claims and Allegations

### A. Carter's Allegations

In his Verified Complaint, Carter names as the sole Defendant, Sgt. K. Daugherty, a sergeant at Sussex I State Prison ("Sussex"). (ECF No. 12, at 1.) In his Verified Complaint, Carter states the following in support of his remaining claims:

1. On July 6, 2022, Daugherty refused to let me go to the shower, isolated from the other inmates in the Housing Unit (HU) that day, when I accessed the "verbal complaint process" of Operating Procedure (OP) 866.1 to her supervisor Branch, J., reporting her denial of my OP841.4 (RHU procedure) liberty to have a shower three times a week.

2. Branch remedied me, and ordered Daugherty to let me take a shower as my resolution per OP866.1 to my verbal complaint.

3. Upon getting me out of my cell to take me to the shower, Daugherty told the other C/O's working the HU to help her "fuck this cell up" when I went to the shower.

4. Once I was locked in the shower, Daugherty and the other 2 C/O's took out her adverse actions in retaliation by trashing my cell, stepping all over my bed linen[s] w/their dirty boots contaminating my pillow and sheets I sleep on, they destroyed my legal filings, and threw out a picture I had in my Bible of my deceased father that can never be replaced, and I suffered severe depression, spells, no new bed linens, and had to pay for more copies of my legal documents that was roughly 25 pages at $0.10 per page.

5. I immediately filed an emergency grievance pursuant to OP866.1 reporting Daugherty's retaliatory actions to another supervisor in the HU, and I requested video footage be saved of the incident and documented my injuries and need to be separated from the environment that was becoming retaliatory.

6. As I continued to proceed through the grievance process for the July 6, 2022 misconduct, Daugherty continued to deny my claims to her supervisors.

. . . .

10. On September 9, 2022, Daugherty continued on her rampage of retaliatory actions and destroyed the electric breaker that controlled my cell in the HU. Electricity for my cell was deactivated but no-one else's was in my HU other than the cell I was in.

11. John Doe came to my cell and said Daugherty said I won't get to have a good birthday now, and that I should've never [written] her up.

12. My birthday was on September 11, 2022, and I was w/o electricity to watch my TV (IM-2 privilege), charge my Jp6 player to correspond with my family and friends, and suffered even more depression attacks, leading to me crying multiple times alone the 3 days w/o electricity all alone.

2

13. My aunt scheduled multiple video visits for the month following Daugherty's destruction of the electricity to my cell to help attempt to cheer me up from the depression I was suffering severely.

14. I had been receiving the visits w/ my aunt w/o issues until October 16, 2022, when Daugherty was the c/o who had to let me go to my visit.

15. Daugherty continued on her rampage of retaliation for me reporting her actions through the grievance procedure and refused to let me go to my scheduled visit for no penological reason, and I never received another visit from my aunt due to illness-related reasons.

16. My life became extremely miserable and depressing as Daugherty was being allowed to retaliate against me to the point I became paranoid, anxious, and depressed so severely when my aunt became ill, I contemplated suicide because of Daugherty's retaliatory actions to me.

17. On September 13, 2022, I went to the outside cage area where all the inmates in RHU HU are able to go upon request, where I was locked into a roughly 70 sq. foot area, w/ only a concrete ground and surrounded by wire mesh style.

18. Upon returning to my cell, Daugherty['s] retaliat[ion] left me as the last inmate in the cage area as she took all the other inmates inside.

19. I was in need to go to the bathroom severely because I suffer from a stomach illness of irritable bowel syndrome ("IBS") as I was left outside by myself causing extreme stomach pains as I tried to hold my bowels in, sweating, dehydrated, and paranoid w/ no water, or bathroom-toilet to use for another roughly 30 minutes outside alone.

20. Daugherty then came back to the cage area to let me go back in and said, "oh, your asthma isn't ok"", sarcastically and then she said, "I can do what I want, so your grievances don't mean shit, just so you know," when I didn't respond to her first sarcastic retaliatory intended comment about my serious respiratory illness.

21. Once I got back into my cell, my lunch meal had just been placed in my cell by someone while I was outside and the hot meal was now cold, and I was the only inmate in the HU not to be able to be afforded the meal hot served, as it was meant to be, and I had unintentionally released feces in my boxers when I was struggling to hold my bowels due to Daugherty continuing to try and succeeding in retaliating against me, humiliating me in front of the other inmates and staff.

22. On October 30, 2022, while housed at SXI under Daugherty's welfare personally in RHU pursuant to OP 841.4 which states, "a correction officer must check each inmate . . . on RHU status twice an hour, no more than 40 minutes apart on a []regular schedule." (Legal Duty). Daugherty failed to do the mandated inmate check (Breach of Duty) from 12:30pm-4:30pm, causing no c/o to check on me, as I was unconscious on my cell floor from becoming weak and falling and hitting my head, and was bleeding from my head (right side of my forehead-above eyebrow) for hours (physical injury) w/ no medical or staff period b/c no-one knew I was unconsciously bleeding.

23. I suffered an open cut on my eyebrow and have a permanent scar now from my injury, I suffered severe depression, anxiety, paranoia spells, and

3

roughly a month of massive migraines but never could get treated due to Daugherty's negligence on October 30, 2022.

24.    On November 3, 2022, Daugherty came into my HU-3A where I was locked in my cell causing no disruption and began yelling that I was a snitch and intel to the entire HU-3A inmates when she deactivated her body camera.

25.    Immediately thereafter her statements to the inmates, the inmates in the HU began threatening to stab me and whoop my ass the first time they got a chance to.

26.    Daugherty continued to put my safety in danger by telling the inmates that she would let them have at it (me) as soon as she could get me to come off protective custody (PC) for snitching on inmates selling drugs, which was a lie.

27.    I never snitched or reported anyone selling drugs and I never been placed on PC, but the maximum security inmates continued to threaten me and harass me for this entire time incarcerated, and I was in a physical fight w/ an inmate b/c he continued to threaten me and harass me from Daugherty's retaliatory statements to the inmates to physically harm me, which I was in a physical altercation b/c of it on December 7, 2022 where I was cut multiple times over my back w/ a prison shank and bitten in my knee when confronted by me.

28.    Everywhere I go now incarcerated (which has been to Red Onion State Prison ("ROSP")), the inmates call me a snitch and threaten me, attempting to extort me, harassing me, and I suffer humiliation, anxiety, and severe paranoia attacks whenever I'm around inmates now in fear for my well-being.

29.    On November 22, 2022, Daugherty came into my HU where I was locked in my cell causing no disruptions as she turned her body camera off again while she was passing out the dinner meals on the bottom tier (I was the last cell of the bottom tier of the HU cell 3A-22).

30.    Daugherty continued on her rampage of adverse actions in retaliation against me and took the last meal on the tray cart for the bottom tier and placed in on the trash shelf of the tray cart (bottom shelf) and went upstairs out of my view to grab a meal from the top tiers' tray cart.

31.    Daugherty then brought that tray to my cell and put it on my door slot, and when I went to grab the meal, w/o penological reason or warning, Daugherty slammed the slot door on me grabbing my meal, and the slot cut my right hand from Daugherty's excessive force an[d] retaliation and yelled "Ahh!" in pain.

32.    My right middle finger knuckle began to bleed and burn immediately from the assault, and it eventually started to swell minutes later as well, leaving a permanent scar on my hand and having a[n] open wound and sore that took roughly 4 weeks to heal.

33.    Once I wiped all the blood from my hand, I went to open the tray to eat my dinner meal, when I opened it, Daugherty had sh[a]ken the tray up in retaliation causing all of the separate meal contents to be contaminated, and saturated w/ the other meal contents (the bread was soggy and soaked in the liquid from the cabbage, the cake was broke into the spaghetti, and the cabbage was mixed w/ the spaghetti).

4

(ECF No. 12, at 2–12.)

Carter raises the following "Legal Claims" (ECF No. 12, at 12):

Claim 1:    "Daugherty continued to take adverse actions against me for filing grievances against her" in "violation of [Carter's] First Amendment[3] . . . to be free from retaliation for accessing the grievance procedure" on the following dates:
(A) July 6, 2022
(B) August 8, 2022
(C) September 9, 2022
(D) September 13, 2022
(E) October 16, 2022
(F) November 3, 2022
(G) November 22, 2022. (ECF No. 12, at 12.)

Claim 2:    "Daugherty used excessive force by slamming my hand in the door slot maliciously w/o penological reason on November 22, 2022, which constitutes a violation of my Eighth Amendment [right4] . . . to be free from cruel and unusual punishment." (ECF No. 12, at 13.)

Claim 3:    "Daugherty acted w/negligence on October 30, 2022 . . . by failing to do the inmate checks pursuant to her legal duties of OP841.4, and caused me the head injuries and mental anguish, emotional distress I suffered . . . which constitutes acts of negligence in Virginia under the common law tort claims personally against Daugherty." (ECF No. 12, at 13.)

Carter asks for monetary damages and any equitable relief the Court deems appropriate. (ECF No. 12, at 14.)

By Memorandum Opinion and Order entered on August 29, 2025, the Court granted in part, and denied in part, Defendant Daugherty's Motion for Summary Judgment and dismissed Claim 1(B). The Court denied the Motion for Summary Judgment without prejudice with

---

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech, or of the press, or the right of the people to peacefully to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

respect to Claims 1(A), 1(C), 1(E), 1(F), 1(G), and Claim 3. (ECF No. 55, at 6.) The Court also denied as moot the Motion to Dismiss. (ECF No. 55, at 16.) On October 17, 2025, Defendant Daugherty filed a renewed Motion for Summary Judgment wherein she asks the Court to enter judgment against Carter for Claims 1(C), 1(F), and 1(G) because Carter failed to exhaust his administrative remedies for these three claims.[5]

Because the Court finds that Carter failed to exhaust his administrative remedies with respect to Claim 1(C) only, the Court will dismiss that claim. Nevertheless, for the reasons stated below, the Motion for Summary Judgment will be DENIED with respect to Claims 1(F) and 1(G).

## II. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and

---

[5] Defendant Daugherty filed a Partial Answer with respect to Claims 1(A), 1(D), and Claim 2. (ECF No. 29.) Defendant Daugherty does not move for summary judgment with respect to Claims 1(A), 1(D), 1(E), and Claim 2.

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Defendant Daugherty asks the Court to dismiss Claims 1(C), 1(F), and 1(G), because Carter failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendant Daugherty bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Relevant here, in support of her Motion for Summary Judgment, Defendant Daugherty submitted: (1) the affidavit of Z. Dunson, the Ombudsperson for Sussex (ECF

7

No. 77-1, at 1–9);[6] (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 77-1, at 10–26); (3) and, a record of Carter's grievance related material relevant to Claims 1(C), 1(F), and 1(G) (ECF No. 77-1, at 27–182).

At this stage, the Court is tasked with assessing whether Carter "has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. Relevant here, Carter filed his own Declaration (ECF No. 80). Carter also submitted a Verified Complaint as recited above.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Carter.

### III.  Undisputed Facts Related to Exhaustion

### A.  Grievance Procedure at the Virginia Department of Corrections

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* Operating Procedure at § 866.1.I.D.1–4. "The first step in in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id.* at § 866.1.I.D.1. If the issue is not resolved verbally, the offender should submit a *Written Complaint. Id.* at § 866.1.I.D.2. Prison staff have fifteen days from receipt of the *Written Complaint* to provide an appropriate written response. *Id.* at § 866.1.II.B.4. "If the issue on the *Written Complaint* is not resolved to the satisfaction of the offender, or staff fail to provide a written response within 15 days, the offender may file a *Regular Grievance* . . . .  The

---

[6] The Court refers to Z. Dunson's affidavit by paragraph numbers.

*Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." *Id.* at § 866.1.I.D.4

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* at § 866.1.III.C.3&4. "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section of the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." *Id.* at § 866.1.III.C.4. "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* at § 866.1.III.C.5. "If a *Regular Grievance* does not meet the criteria for acceptance and review by the Regional Ombudsman and does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria [in OP 866.1] for acceptance." (ECF No. 77-1 ¶ 9 (emphasis added).)

### 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." *Id.* at § 866.1.III.C.3. Once the grievance is accepted for review, the Institutional Ombudsperson determines the proper course of investigation. *Id.* at § 866.1.III.D.1. "Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the offender unless a continuance is authorized." *Id.* at § 866.1.III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A. The appeal must be submitted within five days of receipt of the *Offender Grievance Response. Id.* at § 866.1.IV.B.2. "The offender must submit their appeal within five days of receiving their response to the staff member designated on the Offender Grievance Response-Level I." *Id.* at 866.1.IV.B. Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *See id.* at § 866.1.IV.C.1.a–e. For most issues, the Level II appeal is the final level of review. (ECF No. 21-7, at 3.)

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* at § 866.1.V.B.

## B. Carter's Relevant Grievance Materials

### 1. September 9, 2022 Incident (Claim 1(C))

On September 9, 2022, Carter submitted a Written Complaint (SXI-22-INF-01598) alleging that Sussex officials cut off the electricity in his cell "in retaliation of Daugherty" and Carter requested that video be preserved. (ECF No. 77-1, at 27.) On September 21, 2022, Unit Manager Branch responded that the "information passed on to Intel to [p]reserve footage." (ECF No. 77-1, at 27.) Carter filed a Regular Grievance;[7] however, it was rejected at intake due to

---

[7] In the August 29, 2025 Memorandum Order denying the motion for summary judgment without prejudice, the Court noted: "Carter very clearly submitted a copy of a Regular Grievance to the Court for this incident that appears to be date-stamped "RECEIVED" on September 29, 2022 by the Grievance Office. (ECF No. 39-1, at 62.) The record does not reflect that the Regular Grievance was logged, or that Carter received a response to this grievance. The record also does not reflect that Carter pursued an appeal." (ECF No. 55, at 11.) The Court now observes that Carter, whether by mistake or with the intent to deceive, failed to file the second

10

insufficient information because he failed to identify the "staff member who destroyed electrical outlet." (ECF No. 77-1, at 28–29.) Carter appealed the intake decision, but the intake decision was upheld by the Regional Ombudsman. (ECF No. 77-1, at 29.) Carter never filed another Regular Grievance correcting the deficiency, therefore, he never filed a Regular Grievance for this issue that was accepted and processed through all levels of appeal. (ECF No. 77-1 ¶ 15.)

## 2. October 16, 2022 Incident (Claim 1(F))

On November 3, 2022, Carter submitted a Written Complaint (SXI-22-INF-02153) alleging that Defendant Daugherty yelled out in the pod that Carter was a snitch and that she refused to check on him and he feared for his safety. (ECF No. 77-1, at 32.) Lt. Green responded that he/she "address[ed] this issue with Sergeant Daugherty and [e]nsure[d] . . . staff are providing [Carter] with services you need" and to contact the intel department about video or camera footage. (ECF No. 77-1, at 32.) On November 28, 2022, Carter submitted a Regular Grievance, citing SXI-22-INF-02153, and requesting monetary relief and to be kept separate from Defendant Daugherty. (ECF No. 77-1, at 31.) On December 28, 2022, Warden McCoy provided the Level I response indicating that the camera footage was reviewed and that "the footage [did] not show Sgt. Daugherty yelling out that you are a snitch" and that "[t]here [was] no evidence to support [his] claim." (ECF No. 77-1, at 30.) The Regular Grievance was determined to be unfounded. (ECF No. 77-1, at 30.) According to Z. Dunson, Carter did not properly appeal the Level I response. (ECF No. 77-1.) Specifically, Carter sent a Level I appeal to the Regional Ombudsman indicating that he wished to appeal the December 28, 2022 decision. (ECF No. 77-1, at 37.) Carter signed and dated this appeal on December 30, 2022. (ECF No. 77-1, at 37.) The appeal was received in the Ombudsman Unit on January 25, 2023,

page of this Regular Grievance that shows that it was rejected at intake. (*See* ECF No. 77-1, at 28–29.)

and date-stamped with that date. (ECF No. 77-1, at 37.) D. Hudson, the Regional Ombudsman, sent Carter a "Memorandum" that same day, notifying Carter that his appeal was rejected because it was submitted beyond the five-day period time-period allowed for appeals. (ECF No. 77-1, at 35.)

### 3. November 22, 2022 Incident (Claim 1(G))

On November 22, 2022, Carter submitted a Written Complaint (SXI-22-INF-02360) alleging that Defendant Daugherty took his meal tray and shook it as a form of retaliation in violation of the First Amendment. (ECF No. 77-1, at 55.) Carter threatened "to use physical force next time to defend [him]self." (ECF No. 77-1, at 55.) On December 3, 2022, Unit Manager Carr responded that Carter's First Amendment rights were not violated. (ECF No. 77-1, at 55.) On December 14, 2022, Carter filed a Regular Grievance (SXI-22-REG-0164) complaining that Unit Manager Carr did not understand the First Amendment and seeking monetary damages and camera footage for the alleged retaliation. (ECF No. 77-1, at 54.) On January 12, 2023, Warden McCoy provided the Level I response indicating that after investigation, Defendant Daugherty was not in the pod at the time he received the allegedly shaken meal tray and there was no evidence of staff misconduct or retaliation. (ECF No. 77-1, at 51.) The Regular Grievance was determined to be unfounded. (ECF No. 77-1 at 51.) Carter submitted a copy of the Level I response to the Court reflecting that he filled out the area indicating that he wished to appeal and dated the form January 25, 2023. (ECF No. 39-1, at 34.) This form was date-stamped "RECEIVED" on January 27, 2023, by the Ombudsman Unit. (ECF No. 39-1, at 34.) D. Hudson sent Carter a "Memorandum" that same day, notifying Carter that his appeal was rejected because it was submitted beyond the five-day period time-period allowed for appeals. (ECF No. 77-1, at 57.)

12

### IV.  Exhaustion Analysis

The pertinent statute provides:  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands."  *Booth v. Churner*, 532 U.S. 731, 738 (2001).  Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court.  *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The United States Supreme Court has instructed that section 1997e(a) "requires proper exhaustion."  *Id.* at 93.  The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits."  *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The applicable prison rules "define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Nevertheless "an administrative remedy is not considered to have been available if a prisoner, through no fault of [their] own, was prevented from availing [themselves] of it."  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).  The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any

relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). The Supreme Court observed that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." *Id.* at 643 (citing *Woodford*, 548 U.S. at 102).

"When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* at 644. The United States Court of Appeals for the Seventh Circuit quoted the foregoing language to conclude that, when "refiling" an initially defective grievance, "was available to [an inmate, the inmate's] failure to exhaust is not excusable." *Haywood v. Baylor*, 804 F. App'x 401, 403 (7th Cir. 2020) (citing *Kaba*, 458 F.3d at 684); *accord Wall v. Stevens*, No. 7:16–CV–00373, 2019 WL 1371858, at *4 (W.D. Va. Mar. 26, 2019), *aff'd*, 775 F. App'x 761 (4th Cir. 2019); *see Woodford*, 548 U.S. at 90 (emphasis added) (internal quotation marks omitted) (emphasizing that proper exhaustion entails "using all steps that the agency holds out"); *Wilson v. Jamrog*, No. 98–2281, 2000 WL 145455, at *2 (6th Cir. Feb. 1, 2000) (observing that inmate could have exhausted his claims "simply by following the direction[s]").

## A. **Carter Failed to Exhaust Claim 1(C)**

Carter failed to file a Regular Grievance that was accepted and processed with respect to the September 9, 2022 allegations. Carter's Regular Grievance was rejected at intake, and on appeal of the intake decision, the rejection was upheld. Carter never filed a Regular Grievance that corrected the deficiencies and was accepted into the grievance system and he did not appeal

14

through all levels of appeal.[8]  Accordingly, Carter failed to exhaust his administrative remedies with respect to Claim 1(C).  Claim 1(C) will be DISMISSED WITH PREJUDICE.[9]

## B.  A Material Dispute of Fact Precludes Dismissal of Claim 1(F) and Claim 1(G)

Defendant Daughtery argues that Claim 1(F) and Claim 1(G) should be dismissed for lack of exhaustion.  Defendant Daugherty argues that Carter failed to timely appeal the denial of his Regular Grievances to Level II during the five-day appeal period and, therefore, he did not receive a Level II response.  Defendant Daugherty anchors her claim of untimeliness on the date prison officials *received* Carter's Level II appeal, with respect to Claim 1(F), and the date the prison officials *sent* the Level I response to Carter for Claim 1(G).[10]

---

[8] Carter vaguely states that he "appealed that rejection to the level 2 stages, and no other remedy was available, therefore I exhausted . . . ." (ECF No. 80, at 2.)  That is incorrect. Carter's Regular Grievance was rejected at intake, and his only appeal upheld that decision. Carter had other remedies available.  Carter only needed to fix the deficiencies in his Regular Grievance, resubmit it, and then appeal through Level II.

[9] Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g., Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see Van Houten v. Marlett*, 330 F. App'x 161, 162–63 (10th Cir. 2009).  That is the case here because the thirty-day time limit for filing any relevant grievance has long since expired.  Consequently, Claim 1(C) will be dismissed with prejudice.

[10] The Supreme Court of Virginia has rejected the VDOC's apparent interpretation of the relevant procedures. *See AlBritton v. Commonwealth*, 853 S.E.2d 512, 517 (Va. 2021) (citation omitted) (rejecting the VDOC's argument that "grievance appeals are 'submitted for purposes of exhaustion when they are *received* by VDOC, not when they are *sent*'").  Specifically, the Supreme Court of Virginia stated:

> We believe that the most reasonable interpretation of these provisions is that an inmate may timely send a Level II grievance appeal by placing it in the prison mailing system and that by doing so, the inmate has "appeal[ed]" the grievance "to the next level."  The Commonwealth's contrary interpretation — that the inmate can only meet the five-day deadline when the DOC date-stamps its receipt of the grievance on or before day five — exposes the inmate to a risk over which he has no control.  Under this interpretation, an inmate could deposit his grievance in the

15

With respect to Claim 1(F), the Level I response was issued on December 28, 2022. Carter vaguely contends that he "appealed the level one response on December 30, 2022, signed and swor[e] to that date . . . within the 5 day period time frame, however, despite [his] compliance with the timeframe, the Eastern Regional Ombudsman rejected it . . . ." (ECF No. 80, at 3.) Essentially, Carter avers that he *signed* the appeal on that date, but the record does not definitely reflect that he *mailed* it on that date. Further inspection of the documents date stamped, "RECEIVED" by the Ombudsman Unit on January 25, 2023, reflect that Carter addressed his envelope on December 29, 2022, a day before he contends he signed his appeal, which does not help Carter's cause. (ECF No. 77-1, at 45.) However, Carter also points to the post-mark that appears to be January 3, 2023. (ECF No. 77-1, at 45.) Although January 3, 2023 was six days after the Level I appeal was issued, it tends to show that Carter placed his appeal in the mail within the permitted five days, especially because January 1 would have been a holiday for the post office.

With respect to Claim 1(G), Carter swears that he did not receive the January 12, 2023 Level I response until January 25, 2023, and he "immediately submitted his level 2 appeal and stated that the grievance response has been withheld." (ECF No. 80, at 3.) A review of the portion where Carter indicated he wishes to appeal, reflects that Carter noted, "I received this response today 1-25-2022 [sic]." (ECF No. 77-1, at 56.)

Prisoners are only required to exhaust administrative remedies that are available. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of

---

prison mailing system on day one and still be forever barred from pursuing the claim further in either administrative or judicial forums if the grievance was, for whatever reason, received on day six.

*Id.* (alteration in original) (citation omitted).

[their] own, was prevented from availing [themselves] of it." *Moore*, 517 F.3d at 725 (citing *Aquilar–Avellaveda*, 478 F.3d at 1225; *Kaba*, 458 F.3d at 684). That appears to be the case here. According to Carter, for Claim 1(F), an appeal to Level II was not available, because even though he filed his appeal two days after the Level I denial, his appeal was deemed untimely because it was not received until January 25, 2023. With respect to Claim 1(G), an appeal to Level II was not available, because even though Carter filed his appeal on the day he received his Level I response, the appeal was deemed untimely because he received it thirteen days after the decision had been made. Thus, Defendant Daugherty has failed to meet her burden to show that administrative remedies were available for Carter. Accordingly, the Motion for Summary Judgment will be DENIED on the ground that Carter failed to exhaust his administrative remedies for Claim 1(G) and 1(F).

## V. Carter's Outstanding Motions

### A. Motion for Sanctions

Carter filed a Motion for Sanctions under Federal Rule of Civil Procedure Rule 11(b). (ECF No. 73.) Rule 11(b) provides that by presenting a signed filing to the Court, the filing party represents to the best of his knowledge, information, and belief that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). "[M]aintaining a legal position to a court is only sanctionable when, 'in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like

17

circumstances could not have believed his actions to be legally justified.'" *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)). Moreover, the Court has discretion to impose sanctions under Rule 11. *See Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 177 (4th Cir. 1998) ("The decision to impose sanctions under Rule 11 . . . 'is within the sound discretion of the trial court.'" (quoting *Fahrenz v. Meadow Farm Partnership*, 850 F.2d 207, 210 (4th Cir. 1988)).

Carter believes that Defendant Daugherty filed a false affidavit in support of the initial Partial Motion for Summary Judgment because Dunson stated, "Carter never filed 'any' grievances related to any of the claims in the complaint made on personal knowledge." (ECF No. 74, at 2.) Carter argues that he "very clearly submitted a copy of the Regular Grievance to the Court for this incident." (ECF No. 74, at 3.) Although Carter does not specifically identify which incident he is referring to, he cites pages two through four of what appears to be the Court's August 29, 2025 Memorandum Opinion. (ECF No. 74, at 3.) This citation provides no clarification. Nevertheless, the Court believes Carter is referring to the September 9, 2022 incident that is Claim 1(C). The Court already determined that Carter failed to submit the *entire* Regular Grievance which shows that it was rejected at intake and not logged in the grievance system and the portion Carter submitted was misleading, at best. Carter's argument is therefore not well-taken and certainly does not warrant sanctions against Defendant Daugherty.

In his Declaration in support of his Motion for Sanctions, Carter complains that he had to spend three months responding to meritless motions and that he had "anxiety, paranoia, and depression over the possible decision to dismiss his complaint" based on this alleged false testimony. (ECF No. 74-1, at 2.) First, the motions filed by Defendant Daugherty were not

meritless, and that notion can be immediately dispelled. Moreover, Carter's alleged anxiety over the dismissal of his complaint is not a persuasive reason to impose sanctions.

Finally, in his second Declaration in support of Motion for Sanctions, Carter takes issue with the fact that Z. Dunson stated that his Level II appeal failed to explain why his appeal was filed late with respect to the incident underlying Claim 1(G). (ECF No. 82, at 2.) Carter insists the appeal stated, "the grievance was withheld from me." (ECF No. 82, at 2.) However, besides indicating that he believed it had been opened, he provided no further details about his delayed receipt of the Regular Grievance. Therefore, on the face of the Level II appeal, Carter's argument was not particularly clear. Z. Dunson's statement does not warrant sanctions. The Court has reviewed all of Carter's filings and has determined that Carter fails to show that sanctions are warranted. Accordingly, Carter's Motion for Sanctions (ECF No. 73) will be DENIED.

**B. Rule 54(b) Motion for Reconsideration**

Carter filed a "Motion for Reconsideration of Claim 1(b) August 8, 2022 that Was Exhausted." (ECF No. 58.) If a motion seeks reconsideration of an order before the entry of final judgment, the motion is governed by Rule 54(b). Accordingly, Carter's motion will be construed as a motion under Federal Rule of Civil Procedure 54(b) ("Rule 54(b) Motion".) That rule provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). A district court retains the discretion to reconsider or modify a grant of a partially dispositive motion at any time prior to the entry of final judgment. *See Am. Canoe*

19

*Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); Fed. R. Civ. P. 54(b)). Nevertheless, a court must exercise its discretion to consider such motions sparingly in order to avoid an unending motions practice. *See Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). Under Rule 54(b), a motion for reconsideration generally should be limited to instances such as the following:

> [T]he Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . . [or] a controlling or significant change in the law or facts since the submission of the issue to the Court [has occurred]. Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983); *accord United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 977 (E.D. Va. 1997). The Fourth Circuit has indicated that reconsideration is also appropriate where "a subsequent trial produces substantially different evidence" or "the prior decision was clearly erroneous and would work manifest injustice." *Am. Canoe Ass'n*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988)). The courts do not entertain motions to reconsider which ask the Court to, "rethink what the Court had already thought through--rightly or wrongly." *Above the Belt, Inc.*, 99 F.R.D. at 101. Instead, the ruling in question "must strike [the Court] with the force of a five-week-old, unrefrigerated dead fish." *U.S. Tobacco Coop v. Big. S. Wholesale of Va., LLC*, 887 F3d 236, 258 (4th Cir. 2018).

Carter seeks reconsideration of the Court's determination that Carter failed to exhaust his administrative remedies for Claim 1(b). Carter contends that because he had disciplinary charges filed against him, he was precluded from using the grievance process.[11] As the Court has

---

[11] Carter likely refers to Operating Procedure § 866.1.III.B.1.b.i, that provides that inmates may not file grievances regarding "[d]isciplinary hearing decisions, penalties and/or procedural

explained to Carter previously, *see Carter v. Stith*, No. 3:22cv775, 2024 WL 477985, at *16 (E.D. Va. Feb. 7, 2024), this is simply not true. "[A]lthough disciplinary convictions themselves are not grievable and have a separate appeal process, a claim that a particular officer brought a disciplinary charge to retaliate against an inmate for engaging in protected activity is a grievable issue." *Ofori v. Fleming*, No. 7:20-CV-00345, 2022 WL 791645, at *5 (W.D. Va. Mar. 11, 2022) (citation omitted).[12] Carter's argument lacks merit. Accordingly, the Rule 54(b) Motion will be DENIED.

## VI.  Conclusion

Carter's Motion for Summary Judgment (ECF No. 68) will be DENIED. Defendant Daugherty's Motion for Summary Judgment (ECF No. 43) will be GRANTED in part and DENIED in part. Claim 1(C) will be DISMISSED WITH PREJUDICE. The Motion for Summary Judgment is DENIED with respect to Claims 1(F) and 1(G). Claims 1(A), 1(D), 1(E), 1(F), 1(G), 2, and 3 will be set for trial and a settlement conference in forthcoming orders. The Motion for Sanctions (ECF No. 73) will be DENIED. The Rule 54(b) Motion (ECF No. 58) will be DENIED

An appropriate Order will accompany this Memorandum Opinion.

Date: 5/20/26
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

---

errors, which may be appealed in accordance with Operating Procedure 861.1, *Offender Discipline, Institutions*."

[12] In the present action, unlike *Ofori*, Carter has not presented evidence that prison officials told him he could not grieve his retaliation claims because they pertained to disciplinary infractions.

21